## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                                    Case No.: 18-13386-RAM

Rafael Angel Gonzalez Mendoza and                          Chapter 7
Carmen Cecilia Balguer Peral,

     Debtors.
_____/

## DEBTOR'S RESPONSE TO TRUSTEE'S OBJECTION TO DEBTORS' SCHEDULED VALUATION AND CLAIMED EXEMPTION OF SCHEDULED PROPERTY

**COME NOW** the Debtors, Rafael Angel Gonzalez Mendoza and Carmen Cecilia Balguer Peral, by and through their undersigned counsel and respond to the Trustee's Objection to Debtors' Scheduled Valuation and Claimed Exemption of Scheduled Property (the "Objection"), [Doc. No. 53] as follows:

1. The Debtors filed the instant case on March 23, 2018 (the "Petition Date") [Doc. No. 1].

2. On the Petition Date, the Debtors' Schedule A/B listed two (2) bank accounts with Bank of America, ending in #5758 and #5627 valued at $1,526.38 and $2,614.97 respectively. The Debtors' Schedule C claimed these accounts, and certain assets listed in Schedule A/B, as exempt under the Federal Exemptions [Doc. No. 1].

3. The 341 Meeting of Creditors was held and concluded on May 2, 2018.

4. Prior to the 341 Meeting of Creditors a copy of the Debtors' 2017 tax return and other documentation required by the Trustee, including bank statements, were sent electronically to the Trustee's office.

5. A week after the 341 Meeting the Debtor provided to the Trustee the key to the storage unit where the former assets of the Debtor's defunct corporation were located along with the documentation regarding the closed business.

1

6. The Debtors have provided a plethora of documentation to the Trustee and have attended a lengthy 2004 Examination. In short, the Debtors have cooperated completely and fully with the Trustee and have done their utmost to be forthcoming with regard to their assets and liabilities.

7. The Debtors have amended their Schedules A/B on two (2) occasions. However, the Debtors have never amended their Schedule C to remove the Federal Exemptions as they firmly believe and maintain they are only entitled to utilize said Exemptions.

8. The Debtors are Venezuelan citizens who entered this country on a B-1/B-2 Visa (the "Visitor Visa") on March 23, 2012. The Debtors' Visitor Visa denotes an issuance of March 23, 2012 and an expiration date of March 21, 2022. A copy of said Visitor Visa is attached hereto and incorporated herein.

9. The Debtors applied for political asylum (the Application) in late 2012 or early 2013, claiming a credible fear of persecution were they to return to their native country, Venezuela. As of the Petition Date, the Debtors' Application was still pending.

10. Since the Debtors' Application was pending on the Petition Date they are neither United States citizens nor permanent residents of the United States and as such cannot legally be permanent residents of Florida making their use of the Federal Exemptions proper.

11. On August 29, 2018 the Trustee filed the Objection to which the Debtor now responds.

### THE DEBTORS' EXEMPTIONS ARE PROPERLY CLAIMED UNDER 11 U.S.C. §522(d)

**1. Aliens Residing in the United States Pending an Application for Political Asylum Cannot Satisfy Florida's Permanency Requirements nor Qualify to Claim Florida Exemptions**

The Trustee has objected to the Debtors' claimed exemptions on the grounds that she believes the Debtors to be Florida residents, despite their immigration status, and as such not

2

entitled to the Federal Exemptions and cites the cases of *Bloomfield v. City of St. Petersburg Beach*, 82 So.2d 364, 368 (Fla. 1955), *Lisboa v. Dade County Property Appraiser*, 705 So.2d 704 (Fla. 3rd DCA 1998) and *In re Fodor*, 339 B.R. 519, 523 (Bankr. M.D. Fla. 2006) to support her position.  However, the Debtors' immigration status is relevant to determine the Debtors eligibility for the claimed exemptions. The Debtors are Venezuelan citizens, in the United States on a B-1/B-2 Visa, on the Petition Date. A "visitor" visa is a nonimmigrant visa and generally is used to enter the United States temporarily for business (B-1), for pleasure or medical treatment (B-2), or a combination of these purposes (B-1/B-2).[1]  Initially, when the Debtors began to travel to the United States it was their plan to start a business in the United States. In fact, the Debtors did just that.  However, in late 2012 and/or early 2013 a capture order was entered against the Debtor, in his home country of Venezuela. In fear of said persecution the Debtor became concerned that he would be harmed if he continued to return to and reside in Venezuela and as such filed his Application for political asylum, which was pending approval and/or denial on the Petition Date.

Pursuant to the case of *In re Levy*, which concerned a debtor that was in the United States under an H-1B Visa, which allows the debtor to remain in the United States on a temporary basis for purposes of employment and classifies said debtor as a nonimmigrant, "...[a] Debtor may not use *any* state exemptions afforded by Florida law because at all relevant time periods the Debtor resided in the United States pursuant to a temporary visa.  This fact prevents the Debtor from establishing domicile within the state which in turn precludes the Debtor from availing himself of the state exemptions."[2] In deciding that the debtor in *Levy* was not entitled to claim Florida exemptions Judge Mixon reasoned

---

[1] U.S. Visas U.S. Department of State – Bureau of Consular Affairs – Visitor Visas
[2] *In re Levy*, 221 B.R. 559, 567 (Bankr. S.D. Fla., 1998)

Thus, under section 522(b)(2)(A) and (B), the state law that determines the state exemption to which a debtor may be entitled is the law of the debtor's *domicile* for the 180 days immediately preceding the filing of the petition . . . Here, "domicile" means actual residence with a present intention to remain there. Morris v. Gilmer, 129 U.S. 315, 328-329, 9 S.Ct.289, 293, 32 L.Ed. 690 (1889); 4 *Collier on Bankruptcy* ¶ 522.06 (Lawrence P. King, et al. eds., 15th ed. Rev.1997). Non-immigrant aliens in the United States on temporary rather than permanent visas are incapable of formulating the requisite intent to establish a permanent residence. Cooke v. Uransky (In re Cooke), 683 F.2d 130, 131 (5th Cir. 1982); In re Boone, 134 B.R. 979 (Bankr. M.D. Fla. 1991); In re Gilman, 68 B.R. 374, 375 (Bankr. S.D. Fla. 1986); Cooke V. Uransky (In re Cooke), 412 So.2d 340, 342 (Fla.1982). Without the requisite intent, no domicile exists. Under section 522(b), the lack of a domicile in any state within the 180-day period immediately preceding the filing of the petition is fatal to any right of exemption under the laws of the state. In re Liberman, 44 F.2d 661, 662 (S.D.Ala. 1930). "Hence, one who has domicile in a foreign country during the entire 180-day period cannot claim any exemption under state law . . ." 4 Collier on Bankruptcy ¶ 522.06 (Lawrence P. King, et al. Eds., 15th ed. Rev. 1997).[3]

This Court considered a similar issue in the case of *In re Arispe,* 289 B.R. 245 (2002), wherein the debtor was neither a United States citizen nor permanent resident of the United States and was utilizing the federal exemptions to which the Chapter 13 objected on the basis that the debtor was a "resident" of Florida and found that "as a matter of law that Florida Statute § 222.20 does not apply to non immigrant alien debtors that reside in the state of Florida, but are not domiciled in Florida when they file their bankruptcy petition. Thus, the Opt-Out Statute does not prevent them from utilizing the federal exemptions under 11 U.S.C. § 522(b)"[4] This Court further noted that "[j]ust because a non-immigrant alien is not domiciled in any state, he should not be treated as a "naked debtor" without the right to even exempt the clothes on his back. Congress provided an opportunity for these foreign citizens to seek relief in our bankruptcy

---

[3] *Id.*
[4] *In re Arispe,* 289 B.R. 245, 248 (2002).

courts. Surely Congress did not intend to deprive them of the right to exempt a portion of their assets."[5]

The Trustee first cites to the case of *Bloomfield v. City of St. Petersburg Beach*, to support her position that the Debtors are Florida residents. The *Bloomfield* case concerned an elector, who at all relevant times was a citizen of the United States and who moved from Michigan to Florida and then ran for elected office. The *Bloomfield* court had to determine whether the elector was a permanent resident of Florida and as such a qualified elector. As a citizen of the United States nothing impedes the elector in *Bloomfield* from formulating the required intent to move his residence from Michigan to Florida. Under the Trustee's theory, the mere act of the Debtors having rented an apartment in Florida, purchasing furniture and electronics and incorporating a business in Florida establishes their residence in Florida thereby entitling them to the state exemptions. Under the Trustee's theory, it would follow that aliens, who arrived in Florida illegally or are under unenforced deportation orders thereby clearly having no legal right or ability to remain in the United States and/or Florida, would nevertheless be permanent residents of Florida by simply renting an apartment in the state. Viewing "permanent residence" in that manner would purport to entitle the Debtors to all sorts of erroneous conclusions, such as legally authorizing them to vote in local state elections, despite their temporary immigration status. A case that more closely resembles that facts in the instant case, and is also decided by the Supreme Court of Florida, is *Juarrero v. McNayr*, 157 So.2d 79 (Fla. 1963).

The plaintiffs in *Juarrero* were described by the Court as "holders of nonimmigrant visas valid for unlimited applications for admission into the United States...granted permission...to

---

[5] *Id. See also In re Goldsmith,* Case No.: 02-14039-AJC, decided on January 23, 2003 (Concerning an identical issue and following the holding of *Arispe*).

5

stay indefinitely in the country and depart voluntarily. They do not have permanent visas and, in lay parlance, may be classified as 'Cuban refugees.' The visas are not authority under existing circumstances for them to remain here permanently, that is to say, beyond their immediate need for political asylum. The uncertainty of this need requires an indefinite stay although the visas are temporary in character."[6] The *Juarrero* Court then looked to decide "[c]an an alien, temporarily absent from his homeland because of political persecution, and residing in this country for an indefinite stay by warrant of a temporary visa, make Florida in good faith his permanent home?"[7] In answering this question in the negative the Supreme Court of Florida found that the Juarreros

> ...cannot legally intend to do that which by law and the temporary nature of their visas they are prohibited from doing. It is true that a resident of another state in this country may abandon residence in that state, come to Florida, purchase a home, reside in it, and declare it to be his permanent residence and become entitled to the homestead exemption . . .This is not so, however, in the case of a citizen and former resident of a foreign country who is here under the authority of nothing more than a temporary visa, because such person has no assurance that he can continue to reside in good faith for any fixed period of time in this country. Consequently, we hold he cannot 'legally,' 'rightfully' or in 'good faith' make or declare an intention which he has no assurance he can fulfill or carry out because of the temporary nature of the visa. In other words, he does not have the legal ability to determine for himself his future status and does not have the ability legally to convert a temporary residence into a permanent home.[8]

Additionally, once the Debtors' Application was approved, post-petition, the Debtors would still not have the right to remain in the United States permanently. The Debtors residency, as approved asylees, is permitted only so long as the need for asylum continues. As such, neither the Application nor the grant of asylum, however indefinite in duration, is equivalent to the actual permission to reside in the United States and by extension Florida indefinitely.

---

[6] *Juarrero v. McNayr,* 157 So.2d 79, 80 (Fla., 1963)
[7] *Id.*
[8] *Id.* at 81.

6

The Trustee then cited to the case of *In re Fodor*, 339 B.R. 519 (Bankr. M.D. Fl. 2006), wherein Judge Williamson found, "In order to qualify for the Florida homestead exemption, a debtor must be a permanent resident of the state and intend to make the property in question his permanent residence. An alien can satisfy this residency requirement only if he has obtained permanent resident status or a "green card" as of the petition date."[9] Neither the Debtors in the instant case nor the debtor in *Fodor* had residency status as of the date of the filing of their respective bankruptcy petitions. Judge Williamson determined, "The dispositive issue before this Court is whether the Debtor could form the requisite intent to make his home in Clearwater, Florida, his permanent residence to qualify for Florida's homestead exemption when the Debtor did not receive permanent resident status until three months after he filed his bankruptcy petition."[10] As Judge Williamson pointed out,

> Under Federal Rule of Bankruptcy Procedure 4003(c), the objecting party bears the burden of establishing that the exemption is not properly claimed. ...The first question in determining the applicability of this provision to the Debtor's home is the date, which governs the determination of homestead status. On this question the law is clear: the claim of exemption is to be determined as of the petition date. See, e.g., In re Sandoval, 103 F.3d 20, 23 (5th Cir.1997) (holding debtor's exemptions to be determined on the date of filing); In re Marcus, 1 F.3d 1050, 1052 (10th Cir. 1993)(same); In re Ballato, 318 B.R. 205, 209 (Bankr. M.D. Fla. 2004)(same); In re Buick, 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) (same) ; see also In re Rivera, 5 B.R. 313, 315 (Bankr. M.D. Fla. 1980)(stating  that "the right to claim exemptions by a Debtor is governed by the facts and governing circumstances which existed on the date the petition was filed and not by any changes which may have occurred thereafter"). Consistent with this case law, section 522(b)(2)(A) of the Bankruptcy Code provides that an individual debtor may exempt from his bankruptcy estate "any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable *on the date of the filing of the petition.*" 11 U.S.C. § 522(b)(2)(A).[11]

Judge Williamson next turned to the question of whether the Debtor in *Fodor* was a Florida resident as of the petition date by saying, "[a]n alien debtor can only satisfy the

---

[9] *In re Fodor*, 339 B.R. 519, 519-520 (Bankr. M.D. Fla. 2006)
[10] *Id.* at 521.
[11] *Id.* (emphasis added in original)

permanent residency requirement if the debtor is granted a permanent visa. <u>In re Gilman</u>, 68 B.R.

374, 375; <u>Reheb v. DiBattisto</u>, 513 so.2d 717, 718 (Fla. 3d DCA 1987).[12] In declining to allow

the Debtor's exemption the court in distinguishing *Lisboa* stated,

> First, this case does not involve the homestead exemption in the tax context. The
> homestead exemption for tax purposes is found in section 196.031(1), Florida
> Statutes, . . .[t]he language of this statute relies on subjective "good faith" as
> opposed to the objective ability, via permanent resident status, to maintain a
> domicile in Florida for purposes of exemption from forced sale. It is possible, for
> example, that a person entitled to the tax exemption **may not** be immune' for the
> claims of creditors. See <u>In re Lee</u>, 223 B.R. 594, 599 n.3 (Bankr.M.D.Fla.1998)
> (noting that "the status of property as 'homestead' for tax exemption purposes is
> not controlling' in the determination of eligibility of forced sale exemption. . ."[13]

It is clear by the holdings in the Bankruptcy cases of *Arispe, Levy and Goldsmith* and

several other bankruptcy cases as well as the Florida Supreme Court's holding in *Juarrero* that

the Debtors have properly claimed their assets as exempt under the Federal Exemptions.

### 2. PRUCOL Status is not an Immigration Status nor does it Equate to a Permission to Lawfully Reside in the United States and by Extension the state of Florida

Lastly, the Trustee asserts that pursuant to *Fodor* the Debtors have an immigration status

of "permanently residing under the color of law" ("PRUCOL") and that as such under Florida

law are entitled to Florida exemptions.  However, PRUCOL status and "Permanent Residency"

are not synonymous and should not be equated.  In fact, the 11th Circuit in *Smart v. Shalala,* 9

F.3d 921 (11th Cir., 1993), held that the immigrant's contention in *Smart* that PRUCOL status is

the equivalent of being lawfully admitted for permanent residence was an argument that is

"plainly wrong."[14]  PRUCOL is not an immigration status recognized by the United States

Citizenship and Immigration Services ("USCIS").  Instead, PRUCOL "is a criterion for

---

[12] *Id.*

[13] *Id.* at 523 (emphasis added).

[14] *Smart v. Shalala,* 9 F.3d 921, 923 (11th Cir., 1993).

determining whether an alien is eligible for benefits under certain public welfare programs, such as Medicaid and Supplemental Security Income for the Aged, Blind and Disabled."[15]   In 1996 the Personal Responsibility and Work Opportunity Reconciliation Act was enacted which basically abolished PRUCOL.  Additionally, Florida no longer appears to recognize PRUCOL as grounds for receiving said welfare benefits.[16] As a result, the so-called "permanency" formerly attributed in PRUCOL cases for the limited purposes of receiving welfare benefits, is not the same as the legal permission received from USCIS to remain in the United States and by extension Florida. As such, the Debtors in the instant case cannot claim Florida exemptions.

## VALUATION

The Debtors scheduled the following assets as of the Petition Date:

| Schedule | Line | Description | Scheduled Value | Secured Claim | Claimed Exemption | Specific Laws that allow Exemptions |
|---|---|---|---|---|---|---|
| B | 3.1 | 2016 Honda Odyssey | $33,845.28 | $32,434.36 | $1,410.92 | 11 U.S.C. § 522(d)(2) |
| B | 3.2 | 2015 Jeep Grand Cherokee | $22,181.86 | $21,466.61 | $715.25 | 11 U.S.C. § 522(d)(2) |
| B | 6 | HHG - B-6 Attachment | $2,000.00 | $0.00 | $2,000.00 | 11 U.S.C. § 522(d)(3) |
| B | 7 | Electronics - B-7 Attachment | $500.00 | -- | $500.00 | 11 U.S.C. § 522(d)(3) |
| B | 11 | Clothes | $100.00 | -- | $100.00 | 11 U.S.C. § 522(d)(3) |
| B | 12 | Jewelry - B-12 Attachment | $300.00 | -- | $300.00 | 11 U.S.C. § 522(d)(4) |
| B | 16 | Cash | $10.00 | -- | $10.00 | 11 U.S.C. § 522(d)(5) |
| B | 17.1 | BoA Checking *5758 | $1,526.38 | -- | $1,526.38 | 11 U.S.C. § 522(d)(5) |
| B | 17.2 | BoA Savings *5627 | $2,614.97 | -- | $2,614.97 | 11 U.S.C. § 522(d)(5) |
| B | 19 | Prestige Solar, Inc. | $0.00 | -- | $0.00 | |
| B | 40 | Former Assets of Prestige Solar, Inc. | $10,000.00 | -- | $0.00 | |
| | | | | | | |
| TOTAL | | | $73,078.49 | $53,900.97 | $9,177.52 | $0.00 |

[15] *Id* (*citing* 42 U.S.C. 1382c(a)(1)(B)(i), 20 C.F.R. 416.1618; 42 C.F.R. 435.408(a); *See also* Carton, S., The PRUCOL Proviso in Public Benefits Law: Alien Eligibility for Public Benefits, 14 Nova L.R. 1033, 1035-6 (Sp. 1990)("PRUCOL…is not a category of immigration status, but rather a category for public benefits eligibility…of shifting composition, depending on the specific program in question.).

[16] *See* 414.095(3), Florida Statutes, (providing the eligibility requirements for noncitizens and denoting that asylum applications must be approved by USCIS for said noncitizens to be eligible to apply for benefits and making no mention of PRUCOL).

and turned over the keys to their storage unit located in Delray Beach, Florida, which contained

the $10,00.00 of scheduled former assets of Prestige Solar, Inc., to the Trustee the week

following the 341 Meeting of Creditors. Attached hereto and incorporated herein is a copy of the

Debtors' bank statement for the account ending in # 5758 on the Petition Date, wherein the 2017

tax refund is reflected.

Despite the fact that the liquidation analysis of the Debtors' case under the Federal

Exemptions is $0.00 and should have resulted in the filing of a Report of No Distribution, on

July 2, 2018 the Trustee issued a Notice of 2004 Examination Duces Tecum (the "Notice"). Part

of the Notice was a request to explain six (6) cash withdrawals.  Based on a review of the

Trustee's 2004 Examination Duces Tecum these withdrawals totaled approximately $3,800.00

from January, 2017 to February, 2018. On or about July 19, 2018, Debtors' counsel emailed the

Trustee a letter responding to the Notice.  In paragraph 25 of the response to the Notice, Debtors'

counsel explained the withdrawals to the Trustee.

On or about July 27, 2018, Debtors' counsel received another analysis of the assets of the

Debtors' case (the "Trustee's Analysis") which still included the amount of $5,180.00 in cash on

hand and further indicated that this amount was obtained as a result of the withdrawals from the

Debtors' bank account.  As oftentimes happens in a Chapter 7 bankruptcy, the Trustee did not

agree to all of the values provided for the Debtors' assets.  The Trustee has taken the position

that the Debtors' household goods and electronics are worth $3,250.00 combined rather than

$2,500.00 as reflected in the Debtors' Schedule A/B.  Additionally, the Trustee also increased

the values of the Debtors' clothing and jewelry by $600.00 for a total of $1,000.00, the Cash on

Hand to $5,180.00, bank balances to $11,569.00 and provided for the Estate's potential Pro Rata interest in the Debtors' anticipated 2018 tax refund in the amount of $1,200.00.

As the Debtors were claiming Federal Exemptions which exceeded the amount in dispute with the Trustee and in reliance on the fact that the Trustee was obviously not accepting the explanations provided for said withdrawals and being advised of cases such as *In re Carter*, 236 B.R. 173 (Bankr.E.D. Pa., 1999), wherein the court found, "...once the plaintiff has met the initial burden by introducing sufficient evidence of an unexplained absence of assets, the burden shifts to the debtor to come forward with a satisfactory explanation."[17] The debtor then has the ultimate burden of persuasion."[18]

The Debtors, knowing they had sufficient exemptions to protect any allegedly unexplained withdrawals, despite the fact that they had already sufficiently explained same, were concerned that the Trustee would attempt to attack their discharge for failure to list all of their assets. As a result, the Debtors decided to amend the schedules to list the allegedly "unexplained" cash withdrawals as they have nothing to hide. The Schedule A/B was amended [Doc. No. 37] (the "First Amended Schedules") to provide for the $5,180.00 in cash denoted by the Trustee's Analysis. The Schedules were also amended to provide for $11,569.00 for the account ending in #5758 and the amount in the account ending in # 5627 was reduced to $2,515.00 to conform to the Trustee's Analysis. Bankruptcy Rule 1009 (a)-General Right to Amend provides, "A voluntary petition, list, schedule, or statement, may be amended by the debtor as a matter of course at any time before the case is closed." Rule 1009 allows liberal

---

[17] *In re Levy*, 221 B.R. 559, 561 (Bankr. S.D. Fla. 1998)(citing *First Federated Life Ins. Co. v. Martin (In re Martin*, 598 F.2d883, 887 (7th Cir. 1983) and *In* Carter, 236 B.R. 173 (Bankr.E.D. Pa., 1999) ).
[18] In re Poland, 222 B.R. 374, 379 (Bankr. M.D. Fla. 1998) (citing Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir.1984).

amendment of exemption claims.[19] Absent a showing of bad faith, the court may not deny leave

to amend a schedule.  Bad faith does not exist . . . [where] there is no evidence of an intent to

hide the asset.[20] As shown above, the Debtors have complied with any and all requests made by

the Trustee.

After Debtors' counsel reviewed the above-mentioned response and refreshed the

recollection of the Debtors, they were more certain that the explanation provided on July 19,

2018 was accurate.  Additionally, there was a $2,500.00 withdrawal on the Petition Date from

the Debtors' bank account and the Debtors realized that they had overstated their assets, because

the cash withdrawn on the Petition Date was already included in the balance listed in the bank

account.  As a result, the Schedules were again amended on August 29, 2018.[Doc. No. 49] (the

"Second Amended Schedules"). The Second Amended Schedules reflect the following:

| Schedule | Line | Description | Scheduled Value | Secured Claim | Claimed Exemption | Specific Laws that allow Exemptions |
|---|---|---|---|---|---|---|
| A/B | 3.1 | 2016 Honda Odyssey | $33,845.28 | $32,434.36 | $1,410.92 | 11 U.S.C. § 522(d)(2) |
| A/B | 3.2 | 2015 Jeep Grand Cherokee | $22,181.86 | $21,466.61 | $715.25 | 11 U.S.C. § 522(d)(2) |
| A/B | 6 | HHG - B-6 Attachment | $2,500.00 | $0.00 | $2,500.00 | 11 U.S.C. § 522(d)(3) |
| A/B | 7 | Electronics - B-7 Attachment | $750.00 | -- | $750.00 | 11 U.S.C. § 522(d)(3) |
| A/B | 11 | Clothes | $500.00 | -- | $500.00 | 11 U.S.C. § 522(d)(3) |
| A/B | 12 | Jewelry - B-12 Attachment | $500.00 | -- | $500.00 | 11 U.S.C. § 522(d)(4) |
| A/B | 16 | Cash | $10.00 | -- | $10.00 | 11 U.S.C. § 522(d)(5) |
| A/B | 17.1 | BoA Checking *5758 | $10,927.35 | -- | $10,927.35 | 11 U.S.C. § 522(d)(5) |
| A/B | 17.2 | BoA Savings *5627 | $2,515.00 | -- | $2,515.00 | 11 U.S.C. § 522(d)(5) |
| A/B | 19 | Prestige Solar, Inc. | $0.00 | -- | $0.00 | |
| A/B | 28 | Pro Rata 18 Refund | $1,200.00 | -- | $1,200.00 | 11 U.S.C. § 522(d)(5) |
| A/B | 40 | Former Assets of Prestige Solar, Inc. | $10,000.00 | -- | -- | -- |
| TOTAL | | | $84,929.49 | $53,900.97 | $21,028.52 | $0.00 |

[19] *Kaelin v. Bassett (In re Kaelin)*, 308 F. 3d 885, (8th Cir. 2002), reh'g denied, 2002 U.S. App. LEXIS 24721 (8th Cir. Dec. 3, 2002).
[20] *In re Arnold*, 252 B.R. 778(B.A.P. 9th Cir. 2000); accord *In re Williamson*, 804 F.2d 1355, 15 C.B.C.2d 1225 (5th Cir. 1986).

As illustrated above, the Debtors' Schedule A/B, was amended to return the cash on hand to the

initial amount disclosed of $10.00 and correct the balance in the account ending in #5758 to

$10,927.35. This amount includes the Debtors' 2017 Tax Refund which is fully exempt under

either the Federal Exemptions (Wildcard) or the Earned Income Credit Exemption provided by

the Florida Exemptions.

      Debtors' counsel in an attempt to resolve this matter without the need for further

litigation and costs, also provided the Trustee with a draft of the Debtors' Amended Schedules

A/B and C,  assuming *arguendo*, that the Debtors' would be entitled to claim the Florida

exemptions.  Analyzing the Debtors' case under Florida exemptions, utilizing the values offered

by the Trustee for all household goods, electronics, clothing and jewelry, the payoff amounts on

the cars as stated in reaffirmation agreements and the amounts actually contained in the Debtors'

bank accounts, the liquidation is as follows:

| Schedule | Line | Description | Scheduled Value | Secured Claim | Claimed Exemption | Specific Laws that allow Exemptions |
|---|---|---|---|---|---|---|
| A/B | 3.1 | 2016 Honda Odyssey | $33,845.28 | $31,144.23 | $2,000.00 | Fla. Stat. §222.25(1) |
| A/B | 3.2 | 2015 Jeep Grand Cherokee | $22,181.86 | $20,695.89 | -- | Fla. Stat. §222.25(1) |
| A/B | 6 | HHG - B-6 Attachment | $2,500.00 | $0.00 | $2,000.00<br>$500.00 | Fla. Const. art. X §4(a)(2)<br>Fla. Stat. §222.25(4) |
| A/B | 7 | Electronics - B-7 Attachment | $750.00 | -- | $750.00 | Fla. Stat. §222.25(4) |
| A/B | 11 | Clothes | $500.00 | -- | $500.00 | Fla. Stat. §222.25(4) |
| A/B | 12 | Jewelry - B-12 Attachment | $500.00 | -- | $500.00 | Fla. Stat. §222.25(4) |
| A/B | 16 | Cash | $10.00 | -- | $10.00 | Fla. Stat. §222.25(4) |
| A/B | 17.1 | BoA Checking *5758 | $10,927.35 | -- | $5,740.00<br>$5,069.00 | Fla. Stat. §222.25(4)<br>Fla. Stat. §222.25(3) |
| A/B | 17.2 | BoA Savings *5627 | $2,515.00 | -- | -- | -- |
| A/B | 19 | Prestige Solar, Inc. | $0.00 | -- | -- | -- |
| A/B | 28 | Pro Rata 18 Refund | $1,200.00 | -- | $1,200.00 | Fla. Stat. §222.25(3) |

| | | | | | | |
|---|---|---|---|---|---|---|
| A/B | 40 | Former Assets of Prestige Solar, Inc. | $10,000.00 | -- | -- | -- |
| **TOTAL** | | | $84,929.49 | $51,840.12 | $18,269.00 | **$4,820.37** |

Therefore, even if this Court were to sustain the Trustee's Objection and instruct the Debtors to amend Schedule C to claim Florida exemptions, the Estate would be entitled to be paid a total of $4,820.37, which would result in nothing to be paid to the unsecured creditors, as the Trustee has incurred fees far in excess of that amount in investigating the instant case.

The court in *In re Scoggins,* 517 B.R. 206 (Bankr. E.D. Ca. 2014), utilizing the Chapter 7 Trustee Handbook provides that a Trustee is not supposed to administer a case which does not provide a meaningful distribution to Creditors. Specifically,

> A chapter 7 case must be administered to maximize and expedite dividends to creditors. *A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee* or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this *fundamental principle* when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. §586.[21]

Therefore, as noted by the Court in *Scoggins* "it is beyond cavil that a trustee is "primarily" benefitted when the trustee's fee exceeds the funds that would be available to pay unsecured priority and general claims."[22] This, in turn, the *Scoggins* court reasoned "distills to a proposition that there is a rebuttable presumption that a 330(a)(7) trustee "commission" exceeding the proposed payout to unsecured priority and general claims "primarily" benefits the trustee and does not leave enough for a "meaningful" distribution."[23]

---

[21] *In re Scoggins*, 517 B.R. 206, 222 (Bankr. E.D. Ca. 2014)(quoting the U.S. Trustee Handbook, ch. 7 page 4-1).
[22] *Id.* at 223.
[23] *Id.*

**WHEREFORE**, for the above reasons the Debtors pray this Honorable Court overrule the Trustee's Objection to Exemptions and Deny the Motion for Turnover.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of this Response to Trustee's Objection to Exemptions was served on this 12 day Sept. , 2018 to **Marcia Dunn**, **Chapter 7 Trustee,** via NEF, **all registered users of ECF** via NEF, and the **Debtors** via first class mail.

FREIRE & GONZALEZ, P.A.
Attorneys for Debtors(s)
[ ] Edward Freire, Esq. FBN:0813771
[ ] Laila S. Gonzalez, Esq. FBN:0975291
[X] Gianny Blanco, Esq., FBN: 0078080
10647 N Kendall Dr
Miami, FL 33176
Tel: (305) 826-1774
Fax: (305) 826-1794
courtdoc@fgbkc.com

15