UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

RAFAEL ANGEL GONZALEZ MENDOZA and
CARMEN CECILIA BALGUER PERAL,

Case No.: 18-13386-RAM
Chapter 7

Debtors.
_____/

### RESPONSE TO TRUSTE'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEBTORS' CLAIMED EXEMPTIONS

**COME NOW** the Debtors, RAFAEL ANGEL GONZALEZ MENDOZA and CARMEN CECILIA BALGUER PERAL, and respond to the Trustee's Memorandum of Law in Support of Objection to Debtor's Claimed Exemptions [DE#64], and state as follows:

To obtain the benefits of Florida's exemptions for asset protection, the Debtors must be residents of Florida. In order for the Debtors to be residents of Florida, the Debtors must have a residence in the state as well as the actual intent to reside in Florida permanently. The Debtors, as aliens, can only satisfy the permanent residency requirement if they are granted a permanent visa or "green card."[1] Bankruptcy courts have consistently held that unless an alien debtor is issued said permanent status, i.e., a permanent visa or "green card," then the alien debtor cannot legally formulate the intent required to make his home the family's permanent residence,

---

[1] *Juarrero v. McNayr*, 157 So. 2d 79 (Fla., 1963)(finding that a person from another country, who is in this country with a permanent visa have the freedom and right with certainty to make and declare an intention of permanent residence in this state, but holding that this is not so for "a citizen and former resident of a foreign country who is here under the authority of nothing more than a temporary visa, because such person has no assurance that he can continue to reside in good faith for any fixed period of time in this country. Consequently, we hold that he cannot "legally," "rightfully" or in "good faith" make or declare an intention which he has no assurance he can fulfill or carry out because of the temporary nature of the visa. In other words, he does not have the legal ability to determine for himself his future status and does not have the ability legally to convert a temporary residence into a permanent home."); See also *Alcime v. Bystrom*, 451 So. 2d 1037 (Fla. 3d DCA 1984)(finding that an alien who had resided in the United States for over 20 years, resided in Florida for 10 of those 20 years and had been employed in local government for six years was ineligible for a homestead exemption because he was without a permanent visa.).

1

regardless of the debtor's subjective intention to remain in the state indefinitely.[2] In fact, absent a permanent visa, "an alien debtor may not use *any* state exemptions afforded by Florida law" if at all "relevant time periods said debtor resided in the United States pursuant to a temporary visa. This fact prevents the Debtor from establishing domicile within the state which in turn precludes the debtor from availing himself of the state exemptions."[3] The Debtors' residence in Florida can only be considered temporary when the Debtors continued presence in Florida is solely dependent upon the possibility of having his application for asylum acted upon favorably.[4]

Under the Trustee's logic, whether the Debtors, as aliens, can legally intend to be a permanent resident of Florida no longer depends on the nature of neither their visas nor their legal ability to remain within the US and, in turn, Florida. Instead, pursuant to the Trustee, the

---

[2] See *In re Cooke*, 412 So. 2d 340, 342 (Fla. 1982) (upholding its rationale in *Juarrero v. McNayer* and finding that "a tourist who does not hold a permanent visa cannot be a permanent resident of this state and regardless of what his intent is to do in the future, he is incapable of declaring a home in this state as his permanent residence unless his legal status is changed."); See also *In re Gilman*, 68 Bankr. 374, 375-376 (Bankr. S.D. Fla. 1986)("The Debtor failed to hold a permanent Visa, at the time this case was filed and accordingly, could not possess, legally, the requisite intent to remain permanently for the purpose of exemption status."); *In re Boone*, 134 B.R. 979 (Bankr. M.D. Fla. 1991) (finding that non-immigrant aliens in the United States on a temporary rather than permanent visas are incapable of formulating the requisite intent to establish a permanent residence.); *In re Bermudez*, 1992 Bankr. LEXIS 547, at *4 (Bankr. S.D. Fla. 1992) ("unless the debtor is issued such permanent status, the alien debtor cannot legally formulate the requisite intent to make the house the family's permanent residence, regardless of the debtor's subjective intention to remain indefinitely."); *In re Walter*, 230 B.R. 200, 203 (Bankr. S.D. Fla. 1999)(agreeing with the holdings of *Gilman, Cooke, Boone,* and *Levy* and finding that "the Debtors, Canadian citizens without permanent visas, are not entitled to claim their vessel, or any other property, as a homestead."); *In re Fodor*, 339 B.R. 519 (Bankr. M.D. Fla., 2006)("An alien, like the Debtor in this case, can only meet this residency requirement if he has obtained permanent resident status as of the petition date...").

[3] *In re Levy*, 221 B.R. 559, 567 (Bankr. S.D. Fla. 1998).

[4] *Sudomir v. McMahon*, 767 F.2d 1456 (9th Cir. 1985) ("[T]he status of asylum applicants and its duration can hardly be described as fixed, or permanent. To repeat, they are best described as inchoate. Asylum applicants, therefore, reside in the United States "under color of law," but their residence is not considered by the Secretary to be "permanent." The immigration laws provide a statutory definition of the term "permanent" which supports the Secretary. It means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law. 8 U.S.C. Sec. 1101(a)(31) (1982). Although this section establishes that "permanently" does not mean "forever," see Holley, 553 F.2d at 851, it also establishes that it does not embrace transitory, inchoate, or temporary relationships. A residence may be "permanent" where the INS has permitted an alien to stay in the United States "so long as he is in a particular condition," id., even though circumstances may change, and the alien may later lose his right to stay. A residence is temporary when the alien's continued presence is solely dependent upon the possibility of having his application for asylum acted upon favorably. Aliens who have official authorization to remain indefinitely until their status changes reside permanently; asylum applicants who merely participate in a process that gives rise to the possibility of such an authorization reside temporarily.).

pseudo-permanency provided for the purposes of benefits, like AFDC, SSI, and tuition, is enough.

The Trustee notes that as political asylum seekers, the Debtors are considered "Florida residents qualifying them for a myriad of state benefits" including marriage (and divorce) and in-state tuition rates. However, it is important to note that "residency" in the context of state benefits, when extended, is being extended for specific and limited purposes. For example, a review of Rule 6A-10.044 of the Florida Administrative Code reveals that Florida residency for tuition purposes can be extended to international students with specific visas, citizens of the Marshall Islands, and to individuals with temporary protected status as well as withheld, suspended or stayed deportation orders. It would seem evident, that most, if not all, of these individuals would not be considered permanent residents for any other reason other than tuition. Additionally, one is not required to be a resident of Florida to file for divorce in Florida. Undocumented aliens can seek a divorce in this state, if necessary.

As previously noted in Debtor's Response to Trustee's Objection to Debtors' Scheduled Valuation and Claimed Exemption of Scheduled Property (the "Response") the PRUCOL designation relied upon by the court in *Lisboa* and the Trustee is not an immigration status recognized by the United States Citizenship and Immigration Services ("USCIS"), but was instead created by federal courts and agencies, other than USCIS, in response to the large backlog of asylum applications pending adjudication in the US. This backlog meant that asylum applicants awaiting their asylum decisions remained in the US long enough to seek welfare benefits and were deemed PRUCOL for those limited purposes. Under PRUCOL even aliens with no legal right to remain in the United States were nevertheless eligible for public assistance,

3

allowing them access to benefits while under deportation orders.[5] Furthermore, as noted in the Response, both the US and Florida have eliminated PRUCOL as a basis for receiving welfare benefits.

It is clear by the holding of the Florida Supreme Court in *Juarrero* and *Cooke* and the holdings of the bankruptcy courts in *Gilman*, *Boone*, *Bermudez*, *Levy*, *Walter*, and *Fodor* that the Debtors, as political asylum seekers, cannot satisfy the permanent residency requirement since they have not been granted a permanent visa. Therefore, the Debtors have properly claimed their assets as exempt under the Federal Exemptions since the inception of this case. The Trustee's assertion that "there would be an instance where a political asylum seeker could use the bankruptcy laws and the Florida homestead exemption law as a sword, by choosing between federal and Florida exemptions depending on their assets and liabilities and which option would be more beneficial as a result" is erroneous at best.

The holding in *Lisboa* applies to the homestead exemption in the tax context. As noted by the court in *Fodor* the homestead exemption for tax purposes is found in section 196.031(1) of the Florida Statutes and "[t]he language of this statute relies on subjective "good faith" as opposed to the objective ability, via permanent resident status, to maintain a domicile in Florida for purposes of exemption from forced sale.[6] Therefore, it would follow that if the Debtors were homeowners, which they are not, they would be able to exempt said property for purposes of taxation, but not necessarily to protect against their creditors from forced sale. Therefore, the Debtors would again, only qualify to utilize the Federal Exemptions to shield their assets.

---

[5] *Dept. of HRS v. Solis*, 580 So.2d 146, 1, 48 (Fla. 1991) (discussing *Holley v. Lavine*, 553 F.2d 845 (2d Cir. 1977), and noting that Holley, was an illegal resident that was found to be PRUCOL for purposes of obtaining benefits).
[6] *In re Fodor*, 339 B.R. 519, 523 (Bankr. .M.D. Fla. 2006); See also *In re Lee*, 223 B.R. 594, 599 n. 3 (noting that "the status of property as 'homestead' for tax exemption purposes is not controlling" in the determination of eligibility of forced sale exemption,...).

WHEREFORE, the Debtors request this Honorable Court enter an Order denying the Trustee's Objection and granting such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Response to Trustee's Memorandum of Law in Support of Objection to Exemptions was served on this 15 day October, 2018 to **Marcia Dunn, Chapter 7 Trustee**, via NEF, **all registered users of ECF** via NEF, and the Debtors via first class mail.

/s/ Gianny Blanco

FREIRE & GONZALEZ, P.A.
Attorneys for Debtors(s)
[ ] Edward Freire, Esq. FBN: 0813771
[ ] Laila S. Gonzalez, Esq. FBN: 0975291
[X] Gianny Blanco, Esq., FBN: 0078080
10647 N Kendall Dr
Miami, FL 33176
Tel: (305) 826-1774
Fax: (305) 826-1794
courtdoc@fgbkc.com