UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

RAFAEL ANGEL GONZALEZ MENDOZA and                    Case No.: 18-13386-RAM
CARMEN CECILIA BALGUER PERAL,                         Chapter 7

        Debtors.

_____/

## NOTICE OF FILING OF INITIAL BRIEF OF PETITIONER FLORIDA DEPARTMENT OF REVENUE TO THE SUPREME COURT OF FLORIDA AND ORDER FROM THE SUPREME COURT DISMISSING THE APPEAL

      **COME NOW** the Debtors, RAFAEL ANGEL GONZALEZ MENDOZA and CARMEN

CECILIA BALGUER PERAL and files the attached copies of the Initial Brief of Petitioner Florida

Department of Revenue to the Supreme Court of Florida and Order from the Florida Supreme Court

dismissing the appeal.

                           Respectfully submitted,

                           By:_____
                           FREIRE & GONZALEZ, P.A.
                           Attorneys for Debtor(s)
                           [ ] Edward Freire, Esq. FBN: 0813771
                           [ ] Laila S. Gonzalez, Esq. FBN: 0975291
                           [X] Gianny Blanco, Esq., FBN:0078080
                           10647 N. Kendall Dr.
                           Miami, FL 33176
                           Tel:  (305) 826-1774
                           Fax: (305) 826-1794
                           courtdoc@fgbkc.com

FILED

SID J. WHITE

MAY 19 1998

CLERK, SUPREME COURT
By_____
Chief Deputy Clerk

IN THE SUPREME COURT OF FLORIDA

DADE COUNTY PROPERTY
APPRAISER, DADE COUNTY TAX
COLLECTOR, and FLORIDA
DEPARTMENT OF REVENUE,

        Petitioners,

v.

JOSE LISBOA,

        Respondent.

_____/

CASE NO.   92,628

### INITIAL BRIEF OF PETITIONER
### FLORIDA DEPARTMENT OF REVENUE

On Discretionary Review from the District Court of Appeal
Third District of Florida

          ROBERT A. BUTTERWORTH
          Attorney General

          JOSEPH C. MELLICHAMP
          Senior Assistant Attorney General
          Florida Bar No.  133249

          CHARLIE MCCOY
          Assistant Attorney General
          Florida Bar No.  333646

          Office of the Attorney General
          The Capitol--PL-01
          Tallahassee, Fl  32399-1050

          *Counsel for Department of Revenue*

**TABLE OF CONTENTS**

**Item**                                                              **Page(s)**

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE AND FACTS. . . . . . . . . . . . .1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .5

<u>ISSUE</u>

**CAN AN ALIEN RESIDING IN THE UNITED STATES PENDING HIS APPLICATION FOR POLITICAL ASYLUM, SATISFY THE RESIDENCY REQUIREMENTS CONTAINED WITHIN ARTICLE VII, SECTION 6 OF THE FLORIDA CONSTITUTION AND SECTION 196.031(1), FLORIDA STATUTES, IN ORDER TO QUALIFY FOR FLORIDA'S HOMESTEAD TAX EXEMPTION?** *[certified question]* . . . . . . . . . . . . . . 5

A. The <u>Juarrero</u> Decision is Controlling . . . 5

B. Equating PRUCOL with "Permanent Resident" Reaches An Erroneous Result . . . . . . 11

C. PRUCOL has been Eliminated as a Ground for Welfare Eligibility. . . . . . . . . 13

D. An Immigrant Must be More Than PRUCOL To Receive Homestead Exemption . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . 21

INDEX TO APPENDICES . . . . . . . . . . . . . . . . . 22

## TABLE OF CITATIONS

**Cases**                                                          **Pages**

Alcime v. Bystrom, 451 So. 2d 1037 (Fla. 3d DCA 1984)   . . .   9

Cantor v. Davis, 489 So. 2d 18 (Fla. 1986)  . . . . . . . .  17

Dept. of HRS v. Solis, 580 So.2d 146 (Fla. 1991)  . . . .  12,14

Florida Patient's Compensation Fund v. Von Stetina,
 474 So. 2d 783 (Fla. 1985)   . . . . . . . . . . . .  17

Holley v. Levine, 553 F.2d 845 (2d Cir. 1977),
 *cert.den.*, 435 U.S. 947 (1978)  . . . . . . . . . . .  12

Juarrero v. McNayr, 157 So. 2d 79 (Fla. 1963)   . . . . . *passim*

Matter of Cooke, 412 So. 2d 340 (Fla.1982)  . . . . . . .  9,10

Saxbe v. Bustos, 419 U.S. 65, 95 S. Ct. 272,
 42 L. Ed. 2d 231 (1974)  . . . . . . . . . . . . . .  18

Smart v. Shalala, 9 F.3d 921 (11th Cir. 1993)  . . . . . .  13

Woodall v. Travelers Indemnity Co., 699 So. 2d 1361
 (Fla. 1997)  . . . . . . . . . . . . . . . . . . . .  13

**Other Authority**

**Florida**

Art. VII, §6, Fla. Const.   . . . . . . . . . . . . . .  3,15

§196.031(1), Fla. Stat.   . . . . . . . . . . . . . . .  3,14

§196.012(17) & (18), Fla. Stat.   . . . . . . . . . . . *passim*

§409.026, Fla. Stat.  . . . . . . . . . . . . . . . . .  15

§414.095(3), Fla. Stat. (Supp. 1996)  . . . . . . . .  16,17,19

§111, ch. 96-175, Laws of Fla. (1996)  . . . . . . . . .  15

Rule 12D-7.007(3), Fla. Admin. Code   . . . . . . . . . .  17

**Federal**

8 U.S.C. §1101(a)(13)(C) & (a)(20)  . . . . . . . . . . .  18

ii

8 U.S.C. §1158 [various provisions] . . . . . . . . . 7,20,22

8 U.S.C. §1225(b) [various provisions] . . . . . . . . . . 7

42 U.S.C. §1382c(a)(1)(B)(i) . . . . . . . . . . . . . . 13

8 U.S.C. §§ 1601, 1611, 1612, 1613 . . . . . . . . . 16,18,21

8 U.S.C. §1611(c)(1) . . . . . . . . . . . . . . . . . 19

8 U.S.C. §1621 & §1622(b)(1)(B) . . . . . . . . . . . 19

8 U.S.C. §1641(b) & (b)(7) . . . . . . . . . . . . 7,16,17

Pub. L. 104-193, Title IV, §400 . . . . . . . . . . . . 16

42 C.F.R. §435.408(a) . . . . . . . . . . . . . . . . 13

20 C.F.R. §416.1618 . . . . . . . . . . . . . . . . . 13

**Miscellaneous**

Carton, S., The PRUCOL Proviso in Public Benefits Law: Alien
Eligibility for Public Benefits, 14 NovaL.R. 1033, 1035-6
 (Sp. 1990) . . . . . . . . . . . . . . . . . . . . . 14

iv

## PRELIMINARY STATEMENT

Despite good faith effort, the Petitioners were not able to file a joint brief.  The Department concurs with Dade County's brief with one qualification:  The Department agrees that "lawfully admitted permanent resident" (LAPR) status would entitle an otherwise qualified immigrant to obtain homestead exemption. However, it is not necessary for this Court to decide whether LAPR status is the <u>exclusive</u> designation which would do so.  The legal ability to reside permanently in Florida, not the label used by INS, is crucial.  Application for political asylum is not commensurate with such ability.

## STATEMENT OF THE CASE AND FACTS

Respondent (Lisboa) is a Brazilian who entered this country in 1991.  (R1:14) (R1:140, Plaintiff's Exhibit 1)[1]  He applied for political asylum in late 1993, claiming he feared persecution for his homosexuality if he returned to Brazil.  (R1:145-147, Plaintiff's Exhibit 1)  Apparently, the application is still pending.

Lisboa's passport and visa were attached to the deposition of Juan Gomez, after being identified by him as Plaintiff's Exhibit 3. (R1: 85 [depo. p. 5] at line 11, 161-165)  The passport bears issuance and expiration dates of November 20, 1990 and November 19,

---

[1]Cites to the record will be in the form (R[vol. #]:[page #]).

1

1996; respectively. (R1:161) The visa bears an issuance date of November 27, 1990; and is valid for multiple entries until November 27, 1994. (R1:164)

In 1994, Lisboa purchased a condominium in Miami, and resided there. (R1:14-15) He twice applied for homestead exemption, in March and August of 1995. Both applications were denied by the property appraiser. Upon a hearing in March 1996, the Value Adjustment Board for Dade County upheld the latter denial. (R1:15)

Lisboa sued. In the resultant hearing (in Feb., 1997), it was not disputed that he was "PRUCOL"; that is, "permanently residing under color of [federal] law." (R2:274[trans. p. 3, lines 19-23]). Relying on Juarrero v. McNayr, 157 So.2d 79 (Fla. 1963) and two decisions by the Third District, the trial court denied his motion for summary judgment. (R2:264) The parties stipulated to entry of summary final judgment based on that denial. (R2:260-3, 293-4)

Appeal was taken to the Third District. After oral argument, the parties entered a stipulation concerning the "source and definition" of the term PRUCOL (R295-8). The parties agreed that PRUCOL is employed by some state and federal statutes in determining "eligibility for certain public assistance benefits." (R_:295 at par. 2)

The Third District reversed, essentially holding that PRUCOL, as applied to an asylum applicant, was tantamount to a permanent residency as contemplated by §196.012(17) and (18), Florida

2

Statutes.  (slip op., p. 4-5)  It declined to follow Juarrero, observing that "immigration policies of the United States have changed considerably." *Id.*, p. 7.

The lower court rejected the argument that permanency of residence as to eligibility for welfare benefits is different from "permanent resident" under Florida law as to eligibility for the homestead tax exemption.  *Id.*, p. 8.  It then certified this question:

> Can an alien residing in the United States pending his application for political asylum, satisfy the residency requirements contained within Article VII, Section 6 of the Florida Constitution and section 196.031(1), Florida Statutes, in order to qualify for Florida's homestead tax exemption?

*Id.*, p. 9.

The decision below was rendered February 16, 1998. Petitioners filed their notice to invoke this Court's discretionary jurisdiction on March 11.

## SUMMARY OF THE ARGUMENT

Lisboa came to this country under a temporary visa and passport.  Claiming fear of persecution, he applied for asylum. Due to a backlog of applications in the INS, the application has been pending since late 1993.

Since his asylum application is pending, Lisboa cannot legally be a permanent resident of Florida, regardless of his desire to stay here indefinitely.  It matters not that he was--at the time he sought homestead exemption--deemed to be "permanently residing

3

under color of [federal] law" (PRUCOL), for the limited purpose of receiving some federal welfare benefits.  <u>Immigration</u> law treats Lisboa as a temporary resident of the United States.

Despite Lisboa's legal inability to claim permanent residency, the Third District found him eligible for homestead exemption.  It equated the quasi-permanency of PRUCOL--now rescinded--with the permanence necessary to claim homestead exemption.  In so doing, it interpreted the homestead tax exemption broadly instead of narrowly, and failed to follow controlling precedent established by this Court's decision in <u>Juarrero v. McNayr</u>, 157 So. 2d 79 (Fla. 1963).

The certified question must be answered negatively.  The Third District's decision must be reversed.

4

**ARGUMENT**

**ISSUE**

**CAN AN ALIEN RESIDING IN THE UNITED STATES PENDING HIS APPLICATION FOR POLITICAL ASYLUM, SATISFY THE RESIDENCY REQUIREMENTS CONTAINED WITHIN ARTICLE VII, SECTION 6 OF THE FLORIDA CONSTITUTION AND SECTION 196.031(1), FLORIDA STATUTES, IN ORDER TO QUALIFY FOR FLORIDA'S HOMESTEAD TAX EXEMPTION?** *[certified question]*

**A.    The _Juarrero_ Decision Is Controlling**

An alien residing in the United States pending his application for political asylum <u>cannot</u> satisfy the Florida's permanency requirements, and thus cannot qualify for homestead exemption. To avoid this result under Florida law, the Third District relied on federal immigration policy, and failed to follow <u>Juarrero v. McNayr,</u> 157 So.2d 79 (Fla. 1963). Apparently alluding to the deposition of Juan Gomez (R1:80-165), the court concluded:

> Based on the testimony of the expert witness presented below, it is clear that the immigration policies of the United States have changed considerably since <u>Juarrero</u> was decided.

(slip op., p. 7) No more is said. The pertinent parts of such testimony are not cited or described. No federal statutes, administrative regulations, Congressional proceedings, or national studies are cited. Nevertheless, the court relied on these undescribed policy changes to conclude Juarrero's designation, if determined today, would be PRUCOL; and thus tantamount to a "permanent resident" of Florida. *Id.*

5

As will be detailed below, as of mid 1996 new federal immigration statutes effectively rescinded PRUCOL as a category of immigrants eligible for welfare. Thus, while "immigration policies of the United States " have indeed changed over the years, such change favors denial of state tax exemptions to asylum applicants. Otherwise, immigration policies, such as promptness of INS action of asylum applications, have no bearing on whether an alien can legally intend to be a permanent resident of Florida. What matters is an asylum applicant's legal <u>in</u>ability to remain in this country--that is, the legal inability to convert an indefinite "visit" into a permanent home.

Factually, this case is indistinguishable from <u>Juarrero</u>. Lisboa entered this country on a visa which expired in four years, despite allowing unlimited re-entries. His passport expired in six years. Neither document indicated he was being allowed to immigrate permanently to the U.S. Lisboa applied for asylum about two years after his arrival. His application was pending when he applied for homestead exemption, and apparently still is.

By comparison, the Juarrero's sought "refuge" here to escape the political hostility of the Cuban government. They held nonimmigrant visas which allowed unlimited admissions, but expired after a few years, in 1963. About a month after their arrival, they obtained permission from immigration authorities to stay here indefinitely. Nevertheless, they were not given permanent visas.

6

*See* 157 So.2d at 80.   Their temporary visas did not give them authority to remain in the U.S. permanently; but only indefinitely, as long as their need for asylum remained.  *Id.*  Under these facts, this Court held them ineligible for homestead exemption, as they did "not have the ability to convert a temporary residence into a permanent home." *Id.* at 81.

Similarly, Lisboa does not have the ability to convert his temporary residence into a permanent home.  First, his visa and passport have long since expired. He would have to return to Brazil but for the pendency of his asylum application.  Second, he has applied for asylum, not necessarily permanent residency.  Like the Juarrero's, the "uncertainty of this need [for asylum] requires an indefinite stay." *Id.* at 80.  Nevertheless, as the Juarrero holding makes clear, Lisboa cannot bootstrap his need for an indefinite stay into a legally permanent residency.

Even if he were granted asylum, Lisboa would not have the right to remain here forever.  His residency here would be permitted only so long as his need for asylum remained.[2]  *See* 8 U.S.C. §1158(c)(2) ("Asylum granted under subsection (b) of this section does not convey a right to remain permanently in the United

_____

[2]Under 8 U.S.C. §1225(b) an alien may seek asylum under fear of persecution.  Such fear must be shown to be "credible" as defined by 8 U.S.C. §1225(b)(1)(B)(v), which cross-references the asylum provisions of §1158 ("For purposes of this subparagraph, the term "credible fear of persecution" means ... the alien could establish eligibility for asylum under section 1158 of this title." [e.s.]).

7

States[.]"). Consequently, the grant of asylum, however indefinite in duration, is not the same as permission to reside here permanently. If the grant of asylum does not confer permanent U.S. residency, Florida certainly is not required to extend the homestead tax exemption to an alien who has merely applied for asylum.

To avoid following <u>Juarrero</u>, the Third District made a factual assumption absolutely contradicted by the record:

> [I]t is clear that <u>the immigration policies of the United States have changed considerably</u> since <u>Juarrero</u> was decided. <u>Most significant is the fact that Mr. Juarrero's visa today would not be of a temporary nature. Indeed, like Mr. Lisboa, Juarrero's status would be that of one "permanently residing under color of law.''</u> Consequently, we do not find that our decision today is in conflict with <u>Juarrero</u>. [e.s.]

(slip op., p. 7-8)

Thus, the court attached greatest significance to its assumption that Juarrero's visa would not be temporary if issued today, and that the Juarrero's would be PRUCOL. That assumption is directly contradicted by the record, and by federal law (see n. 5 herein). Lisboa's passport and visa were attached to the deposition of Juan Gomez as Plaintiff's Exhibit 3. (R1:161-165) The passport bears issuance and expiration dates of November 20, 1990 and November 19, 1996; respectively. (R1:161) The visa bears an issuance date of November 27, 1990; and is valid for multiple entries only until November 27, 1994. (R1:164) Thus, it is

8

undisputed that Lisboa's passport and visa were of limited duration; as were the visas in <u>Juarrero</u> and <u>Alcime</u> (discussed below). That Lisboa's visa was temporary implies the Juarrero's passports and visas, if issued today, would be also.

Alternatively, the court below misapprehended a significant factual difference between the Juarrero's and Lisboa--the fact that the Juarrero's were Cuban. As Cubans, the Juarrero's would have special status today.[3] As a Brazilian, Lisboa would not enjoy the special status.

The decision below also cannot be squared with <u>Alcime v. Bystrom</u>, 451 So.2d 1037 (Fla. 3d DCA 1984), the Third District's own precedent twenty-one years more recent than <u>Juarrero</u>. There, an alien who had resided in the United States for over twenty years; resided in Florida for ten years; and been employed in local government for over six years was held ineligible for homestead exemption because he was without a permanent visa. <u>Alcime</u> relied on <u>Juarrero</u> and <u>Matter of Cooke</u>, 412 So.2d 340 (Fla.1982) (foreign citizen visiting Florida as tourist who did not hold permanent visa cannot be a permanent resident of this state and thus cannot place

---

[3]*See* 8 U.S.C. §1641(b)(7) (declaring "an alien who is a Cuban or Haitian entrant" as a "qualified alien" for purposes of welfare eligibility); and §501(e) of the Refugee Education Assistance Act of 1980 [8 U.S.C. §1522] (defining "Cuban and Haitian entrant" to include individuals, among others, granted "any other special status subsequently established under the immigration laws for nationals of Cuba or Haiti"; and to include such nationals who have asylum applications pending).

residence owned in state beyond reach of creditors under homestead exemption from forced sale).  These cases answer the only question which need be answered here:  an applicant for asylum cannot be a permanent resident.

Cooke has greater significance than might be realized at first blush.  It effectively affirmed the continuing vitality of Juarrero, as it also placed controlling importance on the lack of a permanent visa.  Cooke, however, is 19 years more recent. Therefore, the law established by Juarrero is not so dated as the opinion below would imply.

To avoid the controlling authority of Juarrero, the court below made an assumption--that visas in Juarrero would not be temporary today--directly contradicted by the record, and attached "most" significance to that assumption.  Since the assumption is clearly erroneous, the court's logic--and its conclusion--must fail.  Juarrero is controlling.  Lisboa is not legally eligible for the homestead exemption privilege.

### B. Equating PRUCOL With "Permanent Resident" Reaches An Erroneous Result

The court below began its analysis by quoting §§196.012(17) & (18), Florida Statutes; and concluded it "had no doubt Lisboa fully qualifies for the exemption." (slip op., p. 5)  These statutes provide:

> (17) "Permanent resident" means a person who has established a permanent residence as defined in subsection (18).
>
> (18) "Permanent residence" means that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning.  A person may have only one permanent residence at a time;  and, <u>once a permanent residence is established in a foreign state or country, it is presumed to continue until the person shows that a change has occurred</u>.  [e.s.]

The court omitted the underlined portion of subsection (18), even though it has been part of the law since at least 1993. Lisboa was, without dispute, a permanent resident of Brazil until he came here.  Permanency of residence in that country must be presumed until "a change has occurred."  The most reasonable reading of the underlined language is that the "change" which must be shown by residents of foreign countries is a change of <u>legal</u> status, to something which would allow permanent residence in the United States.  Otherwise, every immigrant could claim homestead exemption when, as here, the <u>factual</u> desire to be a permanent resident of Florida is not disputed.  The underlined language would be nullified.

Like the immigrants in <u>Juarrero</u>, Lisboa "made every requirement for the exemption claimed within [his] power." <u>Juarrero</u>, 157 So.2d at 81. The unalterable circumstance remains: Lisboa resides in the United States only temporarily, while his asylum application is pending. His visa and passport expired some time ago. According to Lisboa's own expert, the large backlog of asylum applications pending before the INS allows Lisboa to stay here and work until a decision is made on his application. (R1:84-86) It is only because of the resultant delay that INS does not either grant the application or deny it and remove Lisboa immediately. (R1:87-89) Moreover, it appears the PRUCOL designation was developed by federal agencies other than INS as a response to this backlog. Since INS cannot catch up in processing applications, immigrants awaiting asylum decisions stay here long enough to seek welfare; and are deemed "permanently residing under the color of law" for such purposes. Again, as Lisboa's expert admitted, PRUCOL "is just a category created in a way under the social service system." (R1:90, deposition. at p. 11, lines 17-18)

Some aliens have remained PRUCOL even while under deportation orders not yet enforced. *See* Gomez deposition at p. 27-8 (R1:106-7). *See also* <u>Dept. of HRS v. Solis</u>, 580 So.2d 146, 148 (Fla. 1991) (discussing <u>Holley v. Lavine</u>, 553 F.2d 845 (2d Cir.1977), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978); and noting that Holley, an illegal resident, was found to be PRUCOL for

12

purposes of obtaining benefits). PRUCOL immigrants actually awaiting deportation can hardly be deemed permanent residents of this state. The possibility of having to give homestead exemption to deportees illustrates the reasonableness of requiring more than PRUCOL status to qualify for the exemption.

Under the logic of the opinion below, whether an immigrant can legally intend to be a permanent resident of Florida no longer depends, for example, on the nature and duration of their passport and visa. Instead it depends on the ability of INS to timely process asylum applications. Because of INS's protracted delay, a quasi-permanent designation (PRUCOL)--which was never an immigration status and is no longer a basis for welfare eligibility--has been elevated to the controlling rule of law in Florida. Lisboa cannot be allowed to parlay the backlog of asylum applications and extraordinary delay by INS into permanent Florida residency. By so interpreting §196.012(18), the Third District reached an erroneous result. *See* <u>Woodall v. Travelers Indem. Co.,</u> 699 So.2d 1361, 1363 (Fla. 1997) ("A statute should not be interpreted so as to lead to an absurd result.").

C. **<u>PRUCOL Has Been Eliminated As A Ground for Welfare Eligibility</u>**

The so-called permanency of PRUCOL simply has nothing to do with "permanent resident" as contemplated by Florida's homestead tax exemption laws. Nothing requires this state to recognize PRUCOL as tantamount to permanent residency for purposes of

13

claiming the exemption.  *See* <u>Smart v. Shalala</u>, 9 F.3d 921, 923 (11th Cir. 1993) ("[Immigrant] contends that PRUCOL status is the equivalent of being lawfully admitted for permanent residence. That argument is plainly wrong.").

Even if the analogy to the PRUCOL designation was logical, it is no longer available.  Both the U.S. and Florida have eliminated PRUCOL as a basis for receiving welfare benefits.

PRUCOL is not a category or status of immigrant adopted by the INS.  Until it was eliminated in 1996, it was a designation afforded some immigrants for purposes of establishing their eligibility for welfare benefits.  *See* <u>Smart</u>, 9 F.3d at 923 ("PRUCOL is a criterion for determining whether an alien is eligible for benefits under certain public welfare programs, such as Medicaid and Supplemental Security Income for the Aged, Blind and Disabled"), *citing to* 42 U.S.C. §1382c(a)(1)(B)(i), 20 C.F.R. §416.1618; 42 C.F.R. §435.408(a).  *See also* Carton, S., <u>The PRUCOL Proviso in Public Benefits Law:  Alien Eligibility for Public Benefits</u>, 14 NovaL.R. 1033, 1035-6 (Sp. 1990) (""PRUCOL ... is not a category of immigration status, but rather a category for public benefits eligibility ... of shifting composition, depending on the specific program in question.").

Lisboa concedes this.  At trial, his expert testified:

> [PRUCOL] is just a category created in a way under
> the social service system.

14

(R1:90, Gomez depo. at p. 11, lines 17-18)    Therefore, the permanency attributed to PRUCOL is not the same as permission, received from the INS, to remain in the U.S. as a "lawfully admitted permanent resident" (LAPR).  Since the federal government makes this distinction, Florida can too.

Nevertheless, the Third DCA relied heavily on _Solis_, to conclude Lisboa was a "permanent" resident and entitled to claim homestead exemption.  (slip op., p. 5-6)  _Solis_ was premised on adoption of PRUCOL by Florida law.  There, the certified question read:

> Whether an alien residing in this country pending her application for political asylum is eligible for AFDC benefits as one "permanently residing in the United States under color of law" within the meaning of section 409.026, Florida Statutes. [e.s.]

_Id._, 580 So.2d at 147.  Had Florida law not separately adopted PRUCOL as a welfare recipient category, an alien such as Solis would not have been eligible for AFDC.  _See id._ at 150 ("Therefore, we agree with the district court that Solis and her family fit within the PRUCOL language of subsection 409.026(1), and we approve that court's decision".  [e.s.]).[4]  In contrast, there is no PRUCOL

---

[4]At the time, §409.026(1), Florida Statutes, provided:
The department shall determine the benefits each applicant or recipient of assistance is entitled to receive under this chapter, provided that each such applicant or recipient is a resident of this state and is a citizen of the United States or is an alien lawfully admitted for permanent residence or otherwise

15

terminology in the homestead provisions of Florida's Constitution or the statutory implementing language.

Section 409.026 was repealed in 1996. *See* §111, ch. 96-175, Laws of Fla. (1996). That repeal was part of a massive welfare reform law designed to place limits on the duration of benefits and move welfare recipients back into the workforce. The new law expressly addressed the eligibility of aliens to receive benefits:

> (3) Eligibility for noncitizens.--A qualified noncitizen is an individual who is lawfully present in the United States as a refugee or <u>who is granted asylum</u> under ss. 207 and 208 of the Immigration and Nationality Act, an alien whose deportation is withheld under s. 243(h) of the Immigration and Nationality Act, or an alien who has been admitted as a permanent resident and meets specific criteria under federal law. .... [e.s.]

§414.095(3), Florida Statutes (Supp. 1996). Florida law no longer recognizes PRUCOL as a ground for receiving welfare. With its lynchpin repealed, <u>Solis</u> is no longer good law, and cannot be persuasive by analogy.

Equally important, U.S. immigration law forbids welfare benefits to asylum applicants generally. In 1996, Congress set forth a new policy concerning welfare and immigration. *See* Pub.L. 104-193, Title IV, §400 (effective Aug. 22, 1996); *codified* as 8 U.S.C. §1601. That policy stressed self-sufficiency; that aliens

---

<u>permanently residing in the United States under color of law</u>. [e.s.]

16

not depend on public resources; and that there is a "compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." Congress also enacted broad prohibitions against extending federal welfare benefits to persons who were <u>not</u> "qualified aliens." *See id.*, at 8 U.S.C. §§1611, 1612, 1613.

Specifically, 8 U.S.C. §1611(a) declares, with exceptions not applicable to Lisboa, an alien who is not "qualified alien" is not eligible for any federal public benefit. *See also*, §1612 (qualified aliens not eligible for certain federal programs), §1613 (qualified aliens entering U.S. after Aug. 22, 1996 not eligible for means-tested public benefits for 5 years).

A "qualified alien" is defined in 8 U.S.C. §1641(b). That definition includes seven categories of aliens, none of which declare an alien "permanently residing under the color of law" to be qualified for federal welfare benefits. To the contrary, §1641(b)(2) requires an alien to have been <u>granted</u> asylum to be considered "qualified." None of the other categories include asylum applicants generally.

The 1996 law eliminated PRUCOL as a ground for welfare eligibility. Whatever permanence attributed to that designation cannot, by analogy, be elevated into permanent residence for purposes of claiming homestead exemption. Moreover, the 1996 laws--obviously effective before the Third DCA's decision but well after

17

Lisboa sought homestead exemption in 1995--must be applied by this
Court.   <u>Cantor v. Davis</u>, 489 So.2d 18, 20 (Fla. 1986) ("An
appellate court is generally required to apply the law in effect at
the time of its decision.").

### D. <u>An Immigrant Must Be More Than PRUCOL</u><br><u>To Receive Homestead Exemption</u>

To obtain homestead exemption, an immigrant must be able to
show the good-faith intent to reside in Florida permanently.  This
is more than showing eligibility for federal welfare benefits under
the old or new immigration laws.  As said above, PRUCOL--if it were
still available--is not enough.

Requiring the legal ability to remain in the U.S. permanently
is not arbitrary.[5]  A good example is provided by the definition of
LAPR:

> [t]he term "lawfully admitted for permanent
> residence" means the status of having been
> lawfully accorded the privilege of residing
> permanently in the United States as an immigrant
> in accordance with the immigration laws, such
> status not having changed.

8 U.S.C. §1101(a)(20).  This is the status which Lisboa lacks.  The
crucial difference between this status and PRUCOL is that PRUCOL
does not confer any privileges relating to residence or travel.

---

[5]Requiring the legal ability to remain in the U.S.
permanently is also consistent with Department of Revenue Rule
12D-7.007(3), Fla. Admin. Code (providing that a "person in this
country under a temporary visa cannot meet the requirement of
permanent residence or home and, therefore, cannot claim
homestead exemption.").

For example, under 8 U.S.C. §1101(a)(13)(C), an alien lawfully admitted for permanent residence (LAPR) generally does not have to seek formal re-admission into this country after traveling abroad. In effect, an alien who is LAPR can travel and work much like a U.S. citizen. *See* Saxbe v. Bustos, 419 U.S. 65, 72, 95 S.Ct. 272, 277-8, 42 L.Ed.2d 231 (1974) (immigrant who is LAPR may remain in the U.S. indefinitely and work in this country; return to this country after a temporary absence abroad; and establish a permanent residence in the United States).

Once an immigrant can travel and work much the same as a U.S. citizen, and may establish a permanent residence here, that person is practically indistinguishable from any other Florida resident. It is entirely reasonable to require aliens to obtain some of the day-to-day privileges enjoyed by U.S. citizens--regardless of INS nomenclature--before treating them as permanent residents for tax purposes.

Florida administers the homestead exemption uniformly, without regard to U.S. citizenship. It does not extend the homestead tax exemption to U.S. citizens who permanently reside in other states. Owners of the classic Florida "second home" or "winter home" are not eligible for the exemption. *See* §196.012(18), Florida Statutes (declaring, within definition of "permanent residence," that a person may have only one permanent residence at a time). Nothing in federal law prohibits this practice, or the practice of denying

19

homestead exemption to asylum applicants.  By requiring permanency of residence in this state, Florida law compelled denial of the exemption to Lisboa.

### CONCLUSION

The certified question must be answered negatively, and the Third District's opinion reversed.

Respectfully submitted,

**ROBERT A. BUTTERWORTH**
Attorney General

_____
**Joseph C. Mellichamp**
Senior Assistant Attorney General
Florida Bar No.  133249

_____
**Charlie McCoy**
Assistant Attorney General
Florida Bar No.  333646

Office of the Attorney General
The Capitol--PL-01
Tallahassee, Fl  32399-1050
(850) 414-3300

*Counsel for Department of Revenue*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail to **BRION BLACKWELDER**, counsel for Lisboa, Nova Southeastern Civil Law Clinic, 3305 College Avenue, Fort Lauderdale, Florida 33314; and **MELINDA THORNTON**, Assistant County Attorney, Stephen P. Clark Center, Suite 2810, 111 N.W. First Street, Miami, Florida 33128-1993; this ___19th___ day of May, 1998.

<charles>lisboa\ib2.wpd

**CHARLIE MCCOY**
Assistant Attorney General

DADE COUNTY PROPERTY APPRAISER v. LISBOA 737 So.2d 1078, 24 Fla.
L. Weekly S382 (Fla. 1999)

DADE COUNTY PROPERTY APPRAISER, Dade County Tax Collector,
and Florida Department of Revenue, Petitioners,

v.

Jose LISBOA, Respondent.

No. 92,628.

Supreme Court of Florida.

Jul 08, 1999.

Application for Review of the Decision of the District
Court of Appeal--Certified Great Public Importance Third
District--Case No. 97-874 (Dade County).

## COUNSEL

Robert A. Ginsburg, Miami-Dade County Attorney, and Melinda
S. Thornton, Assistant County Attorney, Miami, Florida, on
behalf of Dade County Property Appraiser & Tax Collector, and
Robert A. Butterworth, Attorney General, Joseph C. Mellichamp,
Senior Assistant Attorney General, and Charlie McCoy, Assistant
Attorney General, Tallahassee, Florida, on behalf of the Florida
Department of Revenue, for Petitioners.

Brion L. Blackwelder, Project Director, Nova Southeastern
University, Civil Law Clinic, Fort Lauderdale, Florida, for
Respondent.

Vincente A. Tome, Miami, Florida, for The Project To
Mobilize Immigrant Students For Eduction (Promise), A Project Of
The Florida Immigrant Advocacy Center, Inc., Amicus Curiae.

## OPINION

PER CURIAM.

We initially accepted jurisdiction to review the decision in Lisboa v. Dade County Property Appraiser, 705 So.2d 704 (Fla. 3d DCA 1998), which certified to this Court a question declared to be of great public importance.  See art. V, s. 3(b)(4), Fla. Const.  Upon further consideration of the certified question and the decision of the Third District Court of Appeal, we conclude that the legal question in this case does not present an issue of "great public importance."  Rather, the question to be answered requires consideration of a narrow issue with very unique facts. Accordingly, jurisdiction was improvidently granted and we hereby dismiss this petition.

It is so ordered.

HARDING, C.J., and SHAW, WELLS, ANSTEAD and PARIENTE, JJ., concur.

OVERTON, Senior Justice, dissents with an opinion.

DISSENTING

OVERTON, Senior Justice, dissenting.

I dissent.  The district court of appeal certified the following question:

Can an alien residing in the United States pending his application for political asylum, satisfy the residency requirements contained within article VII, section 6 of the Florida Constitution and section 196.031(1), Florida Statutes, in order to qualify for Florida's homestead tax exemption?

In this instance, the property appraiser, while recognizing that a lawfully admitted permanent resident alien is entitled to a homestead exemption, determined that this alien who was lawfully in the country was not entitled to a homestead exemption because he was an alien who had a pending application for political asylum.

I believe it is a significant statewide issue for this Court to decide whether an appraiser can unilaterally decide which aliens who are lawfully in this country are entitled to the homestead exemption and which ones are not.  Accordingly, I would accept jurisdiction.