

**ORDERED in the Southern District of Florida on March 4, 2019.**

Robert A. Mark, Judge
United States Bankruptcy Court

_____

```
              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
```

|  |  |
|---|---|
| In re: | CASE NO. 18-13386-RAM |
|  | CHAPTER 7 |
| RAFAEL ANGEL GONZALEZ MENDOZA and CARMEN CECILIA BALGUER PERAL, |  |
| Debtors. |  |

**MEMORANDUM OPINION AND ORDER SUSTAINING CHAPTER 7
TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTIONS**

The trustee in this chapter 7 case objects to the debtors' attempt to utilize the federal personal property exemptions. On the petition date, the debtors, who are Venezuelan citizens, were lawfully residing in Florida and had the actual intent to permanently

reside in Florida. The issue is, were they "domiciled" in Florida and, therefore, subject to Florida exemptions when, on the petition date, they had a pending application for political asylum? This Court says yes. The fact that their right to remain in the United States was subject to termination if their asylum petition was denied did not defeat Florida domicile and entitle the debtors to utilize the federal exemptions.

## Facts

The Debtors in this case are political asylees who have lived in Florida for nearly seven years. They entered the United States in 2012 under B-1/B-2 "visitor" visas that expire in 2022 but they promptly applied for political asylum "in late 2012 or early 2013" (the "Asylum Application") [DE #58, pp.2-3]. According to the Trustee, the Debtors testified "that since 2013[,] they knew [that] they could not return to Venezuela and had every intention of staying in Florida" [DE #64, p.4].[1] Thus, after the Debtors filed their Asylum Application, the Debtors became immigrants seeking to stay indefinitely in the United States as opposed to visitors residing in Florida for a limited duration under a business or tourism visa. And that was their status on March 23, 2018 (the "Petition Date") when they filed their chapter 7 petition commencing this case.[2]

---

[1] Debtors' counsel has not disputed the Trustee's description of the Debtors' testimony.
[2] The Debtors' Asylum Application was granted postpetition [DE #58, p.6], but this postpetition action is not relevant to the analysis

On the Petition Date, the Debtors did not own any real property [DE #1, p.10], so they did not claim a homestead exemption. In Schedule "C," the Debtors claim as exempt only personal property utilizing the federal exemptions in § 522(d) of the Bankruptcy Code (the "Debtors' Claimed Exemptions") [DE #1, pp. 20-21].

## Procedural History

On August 29, 2018, the Chapter 7 Trustee, Marcia T. Dunn (the "Trustee"), filed an objection to the Debtors' Claimed Exemptions (the "Objection") [DE #53]. In her Objection, the Trustee argues, *inter alia*, that "the Debtors are Florida residents, and therefore, are not entitled to the federal exemptions. Fla. Stat. § 222.20." Objection at p.3, para. 10. The Debtors filed a response (the "Response") in which they counter that "aliens residing in the United States pending an application for political asylum cannot satisfy Florida's permanency requirements nor qualify to claim Florida exemptions." [DE #58, p.2]. Therefore, they argue that they are entitled to the exemptions in 11 U.S.C. § 522(d) (the "Federal Exemptions"). The issue is meaningful because the federal personal property exemptions in § 522(d) are more generous than the personal property exemptions available under Florida law.

The Court conducted a preliminary hearing on the Trustee's Objection on September 13, 2018. After the hearing, the Court

---

which must focus on their status on the Petition Date. *In re Fodor*, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006) (collecting cases).

entered an order [DE #62] setting a further hearing on "the issue of whether the Debtors are entitled to claim the federal exemptions set forth in 11 U.S.C. § 522(d)" (the "Contested Matter").

Thereafter, the Trustee filed a Memorandum of Law in Support of [her Objection] (the "Trustee's Memorandum") [DE #64], and the Debtors filed a Response to [the Trustee's Memorandum] (the "Debtors' Memorandum") [DE #65]. The Court conducted a further hearing on the Contested Matter on October 17, 2018. After the October 17th hearing, the Debtors filed a notice of supplemental authority (the "*Lisboa* Brief") [DE #66], and the Court took the Contested Matter under advisement.

## Discussion

Section 522 of the Bankruptcy Code governs exemptions in a bankruptcy case. The Federal Exemptions in section 522(d) identify property that may be exempted from a debtor's bankruptcy estate under federal law. The Federal Exemptions apply to a debtor's bankruptcy case "unless the State law that is applicable to the debtor . . . specifically does not so authorize." 11 U.S.C. § 522(b)(2). If Florida law applies, the Debtors may not claim the Federal Exemptions because Florida Statute § 222.20 (the "Opt-Out Statute") provides that "residents of this state shall not be entitled to the federal exemptions provided in § 522(d) of the Bankruptcy Code."

The Trustee argues that Florida's Opt-Out Statute precludes the Debtors from claiming the Federal Exemptions because they were undeniably "residents" of Florida on the Petition Date. The Court rejects this argument. The Florida Opt-Out Statute only applies if application of Florida law is appropriate under § 522(b)(3)(A). With certain exceptions not relevant here, Florida law is only applicable to debtors who have been <u>domiciled</u> in Florida for at least 730 days prior to filing for bankruptcy relief. In short, the determinative issue here is domicile, not residency. *See In re Arispe*, 289 B.R. 245, 248 (Bankr. S.D. Fla. 2002).

Federal common law governs the meaning of "domicile" for purposes of section 522 of the Bankruptcy Code. 4 *Collier on Bankruptcy* ¶ 522.06, n.16 (16th ed. 2018) (citing *Farm Credit Bank of Wichita v. Hodgson (In re Hodgson)*, 167 B.R. 945 (D. Kan. 1994) and *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989)); *see also Furr v. Lordy* (*In re Lordy*), 214 B.R. 650, 662 (Bankr. S.D. Fla. 1997) (determining a debtor's domicile for 522(b) purposes by reference to *In re Hodgson*). That distinction is not significant here because Florida law and federal law similarly distinguish a person's domicile from a person's residence by reference to permanency. *Compare* Fla. Stat. § 222.17(1) *and Minick v. Minick*, 149 So. 483, 487-88 (Fla. 1933) *with* 4 *Collier on Bankruptcy* ¶ 522.06 (16th ed. 2018).

5

Generally, under Florida and federal law, a person's residence is a place (or places) in which such person lives and keeps belongings, whereas a person is domiciled only in the place where such person intends to make a permanent home. *See, e.g., Minick v. Minick*, 149 So. 483, 487-88 (Fla. 1933); 4 *Collier on Bankruptcy* ¶ 522.06 (16th ed. 2018). Thus, a person can have multiple residences, but only one domicile, and domicile importantly includes the extra element of intent to remain indefinitely. *Id.*

It is undisputed that, on the Petition Date, the Debtors had been Florida residents for at least five years and <u>actually</u> intended to live in Florida indefinitely. Whether the Debtors <u>legally</u> could formulate a permanent intent is the disputed issue.

Several courts have held that an immigrant without a green card cannot intend to permanently reside in Florida. *In re Fodor*, 339 B.R. 519, 522 (Bankr. M.D. Fla. 2006) (collecting cases). On the Petition Date, the Debtors had applied for political asylum but were not lawfully admitted for permanent residence. In other words, the Debtors did not have green cards.

The Debtors argue that without green cards, they could not legally formulate the permanent intent required to establish a Florida domicile and are therefore entitled to use the Federal Exemptions [DE #58, pp.2-8]. For the reasons that follow, the Court disagrees.

<u>The Debtors are Florida domiciliaries within the meaning of 11 U.S.C. § 522(b).</u>

The Court's opinion is informed by various non-binding decisions under state and federal law on how immigration status may affect one's <u>legal</u> intent to permanently reside in Florida. As discussed above, Florida and federal law similarly define the concept of domicile as actual residence coupled with present intention to permanently remain. Relevant jurisprudence on what is meant by "permanent residence" includes tax cases, cases determining eligibility for social services, and exemption cases.

*Varied Applicability and Iterations of Permanency Under the Florida Exemption Scheme*

The Constitution of the State of Florida empowers permanent Florida residents to claim two types of exemptions relating to a permanent Florida residence, one that exempts a Florida homestead (often in its entirety) from most collection actions (the "Homestead Exemption") and another that exempts from taxation some portion of the value of a Florida homestead.

The tax exemption in article VII, section 6 of the Florida Constitution authorizes "[e]very person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner" to exempt from ad valorem taxation a fixed portion of the assessed value of a Florida homestead. Fla. Const.

7

art. VII, § 6 (the "Tax Exemption").  For purposes of the Tax Exemption, the Florida Statutes define "permanent residence" as

> that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning. A person may have only one permanent residence at a time; and, once a permanent residence is established in a foreign state or country, it is presumed to continue until the person shows that a change has occurred.

Fla. Stat. § 196.012(17) (2018); *see also* Fla. Stat. § 196.015 (2018) (setting forth a nonexclusive list of factors to be considered when determining intention to establish a permanent Florida residence).

By contrast, neither the Florida Constitution nor the Florida Statutes define "homestead" or "permanent residence" for purposes of the Homestead Exemption in article X, section 4 of the Florida Constitution.  The Florida Supreme Court bridged the gap, defining "homestead" as follows: "The character of property as a homestead depends upon an actual intention to reside thereon as a <u>permanent</u> place of residence, coupled with the fact of residence." *Hillsborough Inv. Co. v. Wilcox*, 13 So.2d 448, 452 (Fla. 1943) (quoting *Lanier v. Lanier*, 116 So. 867, 868 (Fla. 1928) (emphasis added)).

*Genesis of the Green Card Requirement Under Florida Law*

Two Florida Supreme Court cases, *Juarrero v. McNayr*, 157 So.2d 79 (Fla. 1963) ("*Juarrero*") and *Cooke v. Uransky* (*In re Cooke*), 412 So.2d 340 (Fla. 1982) ("*Cooke*"), are the springboard from which a green-card requirement developed.  Over fifty years ago, in

8

*Juarrero*, the Florida Supreme Court concluded that political asylees cannot have a permanent home in Florida because aliens "cannot legally intend to do that which by law and the temporary nature of their visas they are prohibited from doing." *Juarrero* at 81. In *Cooke*, the Florida Supreme Court determined that a Canadian tourist who did not have a right to reside permanently in the United States "could not legally formulate the requisite intent to make . . . Florida his . . . permanent place of residence." *Cooke* at 343, n.1.

After *Juarrero* and *Cooke*, several courts held that a green card was required to establish permanent residence. *See, e.g., Alcime v. Bystrom*, 451 So.2d 1037 (Fla. 3d DCA 1984) (Tax Exemption case holding that a permanent visa is required to prove an intention to become a permanent resident); *In re Gilman*, 68 B.R. 374 (Bankr. S.D. Fla. 1986) (Homestead Exemption case holding that a permanent visa is required to legally form intent to permanently reside); *Raheb v. Dibattisto*, 513 So.2d 717 (Fla. 3d DCA 1987) (Immigrants without a permanent visa "are clearly ineligible" to claim a Homestead Exemption.). For the most part, the progeny of *Juarrero* and *Cooke* simply adopt the Florida Supreme Court's holdings without much, if any, discussion or analysis of intervening changes in federal immigration law and factual distinctions among the cases.

There are, however, two exceptions to the general green-card prerequisite that developed. One exception is family-based. An immigrant without a green card can intend to permanently reside in

9

Florida if a member of the immigrant's family has a right of permanent residence. *In re Oyola*, 571 B.R. 874 (Bankr. M.D. Fla. 2017) (discussing family exception to permanent residence requirement).

The other exception involves immigrants classified as persons permanently residing under color of law (also referred to as "PRUCOL"). *See, e.g., Lisboa v. Dade County Property Appraiser*, 705 So.2d 704 (Fla. 3d DCA 1998) ("*Lisboa*"). PRUCOL immigrants do not have green cards but nevertheless are treated as having a "'permanent' status." *Id.* at 707. Applicants for political asylum are among the classes of immigrants deemed to be PRUCOL. *Id.* at 705.

*Applicability of Florida Exemption Cases to Permanence for Political Asylees*

When interpreting state law, the Court is bound to follow Florida Supreme Court precedent and, absent interdistrict conflict, caselaw from Florida's district courts of appeal (the "DCAs"). *Arawak Aviation, Inc. v. Indemnity Ins. Co. of N. America*, 285 F. 3d 954, 958-89 (11th Cir. 2002). In this Contested Matter, the Court finds that state court cases provide no clear guidance. Nearly all, if not all, of the relevant state court cases are fact specific, *see, e.g., Grisolia v. Pfeffer*, 77 So. 3d 732, 734-36 (Fla. 3d DCA 2011) (collecting cases and highlighting factual distinctions), *Cooke* at 343 (limiting the court's conclusion to "the particular

circumstances of this case"), and many state court cases are not easily reconciled.

The Florida Supreme Court's decision in *Juarrero* can be cited for the proposition that political asylees cannot form a permanent intention, while a later DCA case, *Lisboa*, can be cited for the proposition that they can. *See Lisboa* at 707 (explaining that "Mr. Juarrero's visa today would not be of a temporary nature"). Further muddying the waters is the fact that both *Juarrero* and *Lisboa* are Tax Exemption cases, and an immigrant who can form a permanent intention for tax purposes might not be able to form the same intention for purposes of claiming Florida's Homestead Exemption. *See, e.g., In re Fodor*, 339 B.R. at 523 (citing *In re Lee*, 223 B.R. 594, 599 n.3 (Bankr. M.D. Fla. 1998)); *Grisolia v. Pfeffer*, 77 So. 3d 732, 736 (Fla. 3d DCA 2011). Nevertheless, Florida courts have held that permanency in the context of Tax Exemption cases is relevant to the analysis of eligibility for the Florida Homestead Exemption. *See, e.g., Cooke* at 343 (*Cooke*, a Homestead Exemption case, cites *Juarrero*, a Tax Exemption case, as "pertinent" authority).

*Diminishing Vitality of PRUCOL Status*

Another obstacle to harmonizing Florida jurisprudence on a political asylee's ability to form a permanent intention is the fact that most Florida cases give weight to an immigrant's official immigration status, and immigration laws are a moving target.

Political asylees might have been issued temporary visas at one point in time, and no visas at another. They might be considered persons PRUCOL at one point in time, and PRUCOL status later might not be recognized as an official status.

The Trustee and the Debtors both focus on PRUCOL classification but disagree on whether the Debtors have PRUCOL status. The Debtors argue that PRUCOL was abolished as an official immigration status in 1996, and to the extent PRUCOL status survives at all, PRUCOL's only remaining vitality is in connection with state-level social services. [DE #58, pp.8-9; DE #65, pp.3-4; DE #66, pp.18-23]. The Florida Statutes explicitly made PRUCOL persons eligible for social services. *See, e.g., Alfred v. Florida Department of Labor and Employment Security*, 487 So.2d 355, 357 (Fla. 3d DCA 1986) (PRUCOL immigrants qualify for unemployment compensation under Florida statutory formulation of eligibility in Fla. Stat. § 443.101(7) (1985)); *Solis v. Department of Health and Rehabilitative Services*, 546 So.2d 1073, 1074 (Fla. 3d DCA 1989) (PRUCOL immigrant qualifies for aid for dependent children per Fla. Stat. § 409.026(1) (1987)), *aff'd*, 580 So. 2d 146 (Fla. 1991). According to the Debtors, the Florida Statutes no longer recognize PRUCOL as a class of persons eligible for social services, and the Court should not classify any immigrants as PRUCOL. [DE #58, pp.8-9; DE #65, pp.3-4].

The Trustee argues that PRUCOL status is alive and well. [DE #64, p.3, n.2]. The Court's independent research indicates that one

of the Florida Statutes cited above eliminated its reference to PRUCOL, while another Florida Statute still uses the phrase. *Compare* Fla. Stat. § 409.026(1) (repealed in 1996) *with* Fla. Stat. § 443.101(7) (2013) (excepts persons "permanently residing . . . under color of law" from its description of aliens who are ineligible for unemployment benefits). Moreover, at least one Florida appellate case championing the rights of PRUCOL immigrants, *Lisboa v. Dade County Property Appraiser*, was decided after 1996, the year in which the Debtors contend that PRUCOL was abolished. 705 So. 2d 704 (Fla. 3d DCA 1998).

In *Lisboa*, Florida's Third District Court of Appeal ruled that an applicant for political asylum is eligible to claim Florida's Tax Exemption as a permanent Florida resident. The Third DCA also certified for discretionary review to the Florida Supreme Court the following question:

> Can an alien residing in the United States pending his application for political asylum, satisfy the residency requirements contained within Article VII, Section 6 of the Florida Constitution and section 196.031(1), Florida Statutes, in order to qualify for Florida's homestead tax exemption?

*Lisboa* at 708.

The *Lisboa* Brief filed by the Debtors is the initial brief filed by the Florida Department of Revenue with the Florida Supreme Court. In the *Lisboa* Brief, the Florida Department of Revenue argued that "[b]oth the U.S. and Florida have eliminated PRUCOL as a basis

13

for receiving welfare benefits." [DE #66, p.19]. Nevertheless, the Florida Supreme Court dismissed the Florida Department of Revenue's application for review. *Dade County Property Appraiser v. Lisboa*, 737 So.2d 1078 (Fla. 1999) (per curiam) ("[T]he question to be answered requires consideration of a narrow issue with very unique facts. Accordingly, jurisdiction was improvidently granted.").

*Relevance of Official Immigration Status*

On the Petition Date, the Debtors had applied for, but had not yet been granted, political asylum. Under current immigration laws, the Debtors were not lawfully admitted for permanent residence. The United States Code explicitly says as much, 8 U.S.C. § 1158(c)(2) (2018) ("Asylum granted under subsection (b) does not convey a right to remain permanently in the United States."), and imposes a one-year waiting period on adjustment to permanent residence after an application for asylum is granted. 8 U.S.C. § 1159(b) (2018). This means that the Debtors could not obtain what is colloquially known as a "green card" (i.e. proof of permanent resident status) for more than a year from the Petition Date.

A debtor's official immigration status is probative of the debtor's intent to establish a permanent Florida residence and, in some instances, may be determinative. However, the Court declines to base this opinion <u>solely</u> on the Debtors' official immigration status. As simply stated in a 2011 opinion of Florida's Third District Court of Appeal (the "Third DCA"), to find otherwise would

14

"ignore that eligibility for the Homestead Exemption depends on the intent of the homesteader rather than that of the U.S. Citizenship and Immigration Services." *Grisolia v. Pfeffer*, 77 So.3d 732, 735 (Fla. 3d DCA 2011) ("*Grisolia v. Pfeffer*").

*Grisolia v. Pfeffer* is a Homestead Exemption case involving the family-member exception to the right-of-permanent-residence requirement. In that case, the Third DCA assessed an immigrant's ability to formulate a permanent intention. After embarking on a sweeping review of *Cooke, Juarrero*, and their progeny, the Third DCA concluded that many of the cases discussed above are of limited precedential value.

So, where does that leave us? The Court rejects the broad conclusion reached in those cases that invariably require a green card, that is, lawful admission for permanent residence, to establish a permanent intention. That bright-line rule was not necessary to support the result reached in most, if not all, "green-card requirement" cases. In fact, the Court agrees that an immigrant legally cannot form an intent to permanently reside in Florida if the immigrant is living in Florida illegally or under a temporary visa, such as a tourist or business visa with an expiration date. But those are not the facts here. On the Petition Date, the Debtors were lawfully living in Florida and were not here solely under a temporary visa. True, they did not have green cards, but they were

15

residing here <u>indefinitely</u> pending a determination granting or denying their Asylum Application.

*Federal and Florida Jurisprudence Support an Interpretation of Permanency That is Synonymous With Indefinitely*

*Lisboa* is of particular relevance to the Contested Matter before the Court because the *Lisboa* Court discussed the definition of "permanent" in the Immigration and Naturalization Act, which today is still defined as follows:

> The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.

*Lisboa* at 706-07 (citing 8 U.S.C. § 1101(a)(31) (1998)); *see also* 8 U.S.C. § 1101(a)(31) (2014) (identical definition of "permanent").

The *Lisboa* Court also cited to and quoted from the Florida Supreme Court's opinion in *Department of Health and Rehabilitative Services v. Solis*, 580 So.2d 146 (Fla. 1991) ("*Solis*"). That case held that an applicant for political asylum is eligible for welfare benefits as an immigrant PRUCOL and reasoned as follows:

> Unlike the word "permanent," Congress has not defined the word "temporary." "Temporary" and "temporarily," however, are used in 8 U.S.C. Sec. 1101(a)(15) in reference to students, tourists, business visitors, and specific workers. As stated in the dissent to *Sudomir* [*v. McMahon*, 767 F.2d 1456, 1467 (9th Cir. 1985)]: "The common characteristics of all these temporary relationships is that they exist for a defined purpose with a defined end, and there is never any intention of abandoning the country of origin as home."

16

*Lisboa* at 707 (quoting *Solis* at 149) (footnote omitted).

In *Solis*, the Florida Supreme Court cited approvingly to *Holley v. Lavine*, 553 F.2d 845 (2d Cir. 1977). In that case, the federal Second Circuit Court of Appeals found that a Canadian national ("Holley") residing illegally in the United States was nevertheless PRUCOL and eligible for social services. *Solis* at 148. The Immigration and Naturalization Service indicated in a letter that it did not intend to deport Holley. The Florida Supreme Court interpreted the Second Circuit's opinion as follows:

> The [Second Circuit] [c]ourt found Holley to be permanently residing in the United States because, even though she could be deported, the reality was that she would not be. "Permanently," therefore, does not mean "forever," but, rather means an indefinite period of time.

*Solis* at 148 (footnote omitted).

Thus, in the context of welfare benefits, the Florida Supreme Court looked to federal cases interpreting the meaning of "permanent residence" and declined to adopt a bright-line rule that objectively would make immigrants without green cards incapable of forming the requisite legal intent. This Court finds persuasive the Florida Supreme Court's reasoning in *Solis* and holds that an immigrant legally can form the permanent intention required to establish a U.S. domicile if the immigrant lawfully can reside in the U.S. indefinitely.

On the Petition Date, the Debtors lawfully were living in Florida indefinitely and actually intended to establish a permanent Florida residence. Therefore, on the Petition Date, the Debtors were domiciled in Florida within the meaning of 11 U.S.C. § 522(b) and cannot claim the Federal Exemptions.

## Conclusion

This Contested Matter boils down to one core issue: actual versus legal intent to permanently reside in Florida. This Court rejects a bright-line rule that would bar any foreign citizen without a green card from having the legal intent necessary to establish domicile in Florida. Where, as here, the Debtors entered the United States lawfully under temporary visas, promptly applied for asylum status and had the actual intent to reside permanently in the United States, the Court holds that the Debtors could and did have both the actual and legal intent for permanent residence necessary to establish domicile.

Therefore, it is -

**ORDERED** as follows:

1. The Trustee's Objection to Exemptions is sustained to the extent the Trustee objected to the Debtors' claim of exemptions under the Federal Exemption Scheme.

2. The Debtors shall file an amended Schedule "C" by March 18, 2019.

3. The balance of the Trustee's Objection to Exemptions, which challenged the Debtors' proposed valuation of their personal property, is overruled without prejudice to the Trustee renewing her objection after the Debtors file their amended Schedule "C."

###

COPIES TO:

Joshua C. Kligler, Esq.
Chapter 7 Trustee's Counsel
Dunn Law, P.A.
66 West Flagler Street
Suite 400
Miami, FL 33130

Laila S. Gonzalez, Esq.
Debtors' Counsel
Freire & Gonzalez, P.A.
10647 N. Kendall Drive
Miami, FL 33176